IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CYNTHIA LLOYD *on behalf of herself and others similarly situated individuals*,

    Plaintiffs,

v.

OAK AT THE LEAGUE LLC and WALDEN DAVIS, JR.,

    Defendants.

Civil Action No.
1:20-cv-00393-SDG

### ORDER

This matter is before the Court on Defendant Oak at the League LLC's Motion to Compel Binding Arbitration and to Dismiss or, in the Alternative, Stay Proceeding [ECF 5].[1] For the reasons stated below, Defendant's motion to dismiss is **DENIED WITHOUT PREJUDICE**.

**I.   BACKGROUND**

On January 28, 2020, Plaintiff Cynthia Lloyd filed this putative collective action against Oak at the League LLC (Oak) and Walden Davis, Jr. for alleged violations of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201–16.[2]

---

[1] During a teleconference with the parties on April 23, 2020, the Court denied Defendant's alternative request that proceedings be stayed [ECF 22].

[2] ECF 1, ¶ 1.

Oak is "an entertainment facility offering comedy shows, night life, and Sunday brunch."[3] Plaintiff Cynthia Lloyd formerly worked at Oak as a bartender.[4] Davis is alleged to be the "owner, president, managing member, and CEO" of Oak.[5] Lloyd contends that Oak failed to pay her minimum wages and overtime compensation, and that Davis was responsible for instituting a company-wide policy not to pay bartenders minimum wage.[6] Defendants purportedly treated tips as wages in violation of the FLSA.[7]

### a.     The Motion to Compel Arbitration

On February 24, 2020, Oak filed its motion to compel arbitration based on a clause in its employee handbook.[8] Oak argues this handbook requires Lloyd to arbitrate all of her claims.[9] A declaration by Oak's registered agent (Vivianne Hardy Townes) attests that, "[a]s a condition of their employment, all of Oak's employees sign an acknowledgement of the terms and conditions contained" in

---

[3]   *Id.* ¶ 1.

[4]   *Id.* ¶¶ 1, 19–20.

[5]   *Id.* ¶ 1.

[6]   *Id.*

[7]   *Id.*

[8]   ECF 5-1.

[9]   *Id.*

the employee handbook.[10] A copy of the pertinent handbook is attached to Townes's declaration as Exhibit A.[11] Townes further swears that, "[a]t the inception of [Plaintiff's] employment with Oak, Plaintiff received and signed the Handbook."[12] A single page of the acknowledgment that was signed by Lloyd is attached to Townes's declaration as Exhibit B.[13]

The arbitration clause in the Exhibit A handbook states:

> **1.6 Dispute Arbitration**
>
> In return for Company's promise to do the same, your continued employment, and other benefits conferred through the employment relationship, you the employee (hereinafter "you," "your") promise to submit to binding arbitration all claims, disputes, or controversies with the Company and its officers, directors, and employees arising out of or relating to your employment relationship with Company, including disputes related to your wages and benefits, your termination, intellectual property rights, confidentiality, and any breach of this agreement, to be decided by an independent, mutually agreed upon arbitrator and any Company arbitration policy or agreement. In the event an arbitrator cannot be mutually agreed upon, Company

---

[10] ECF 5-2, ¶ 4.

[11] ECF 5-3, at 1–51.

[12] ECF 5-2, ¶ 6.

[13] *Id.*; ECF 5-3, at 52–53.

>     shall have sole authority to identify an independent arbitrator.[14]

Oak argues that the arbitration clause is a valid offer under Georgia law that Lloyd accepted through her continued employment with Oak, creating an enforceable agreement.[15] Oak also contends that this agreement is not illusory because Oak can only modify the arbitration clause by providing official, written notice.[16]

### b.   Plaintiff's Response

Lloyd asserts that she never received, reviewed, or consented to the handbook attached as Exhibit A to Townes's declaration.[17] In support, Lloyd points to Oak's own evidence, arguing that the acknowledgment page Oak says she signed (Townes's declaration, Exhibit B) does not correspond to the acknowledgment page in the Exhibit A handbook.[18] Lloyd also provided a declaration of her own, attesting that she never received the handbook containing the arbitration clause.[19]

---

[14]   ECF 5-3, at 11 ¶ 1.6.

[15]   ECF 5-1, at 4–7.

[16]   *Id.* at 8–9 (citing ECF 5-3, at 10).

[17]   ECF 7, at 1.

[18]   *Id.* at 1–2.

[19]   ECF 7-1, ¶¶ 2, 8.

## II.     DISCUSSION

The parties do not dispute that Georgia law applies to the question of whether they formed a valid contract.[20] There is a dispute of fact, however, concerning whether Lloyd ever received and agreed to the handbook containing the arbitration clause and, thus, a dispute about whether the parties agreed to arbitrate. The federal presumption in favor of arbitration does not apply to disputes concerning the formation of an agreement to arbitrate. *Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (citing *Bazemore v. Jefferson Capital Sys., LLC*, 827 F.3d 1325, 1329 (11th Cir. 2016).

> "There are three factors courts consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitrate was waived."

*Steffanie A. v. Gold Club Tampa, Inc.*, No. 8:19-CV-3097-T-33TGW, 2020 WL 588284, at *2 (M.D. Fla. Feb. 6, 2020) (quoting *Senti v. Sanger Works Factory, Inc.*, No. 6:06-cv-1903-Orl-22DAB, 2007 WL 1174076, at *2 (M.D. Fla. Apr. 18, 2007)). Only the first factor is at issue here.

---

[20] *See, e.g.*, ECF 5-1, at 3 (acknowledging Georgia law applies to contract formation issue); ECF 7, at 10 (applying Georgia law).

The evidence provided by Oak does not at this stage demonstrate with any degree of certainty that the parties entered into a binding agreement to arbitrate. To create an enforceable contract, there must (among other things) be a meeting of the minds, and unconditional and unequivocal acceptance. *Auto-Owners Ins. Co. v. Crawford*, 240 Ga. App. 748, 750 (1999) (citing cases). The parties' minds must meet "'at the same time, upon the same subject matter, and in the same sense'" concerning arbitration. *Auto-Owners Ins.*, 240 Ga. App. at 750 (quoting *Wilkins v. Butler*, 187 Ga. App. 84, 85 (1988)).

Townes's declaration indicates that "all" employees were asked to sign the acknowledgment that is part of the handbook and that Lloyd signed the acknowledgment.[21] But Townes does not testify that she herself provided Lloyd with the handbook containing the arbitration clause. The acknowledgment signed by Lloyd (Townes's declaration, Exhibit B) does not itself refer to the arbitration clause.[22] Nor does Townes attest, if she can, that the Exhibit A handbook with the arbitration clause is the *only* version of the handbook that Oak has ever distributed,

---

21   ECF 5-2, ¶¶ 4, 6.
22   ECF 5-3, at 53.

or at the very least that *every* version of the handbook Oak has ever distributed contained the same arbitration clause.[23]

While Lloyd does not contest that her signature appears on the Exhibit B acknowledgment,[24] it is not at all clear what document Lloyd was acknowledging. The signed acknowledgment refers to an "Employee Handbook," but Oak has not sufficiently established that this reference is to *the* handbook with the arbitration clause on which Oak relies (Exhibit A), as opposed to some other handbook that may or may not contain an arbitration clause. There is no evidence that every version or iteration of Oak's Employee Handbook contained an arbitration clause that is the same or substantially similar to the one attached to Townes's declaration. In short, Lloyd signed an acknowledgment of something, but it is not clear what that "something" was.

Reinforcing this doubt is the fact that Lloyd's signed acknowledgment at Exhibit B does not match up to the acknowledgment pages in the Exhibit A handbook. The acknowledgment in the handbook is on pages 49–50; the acknowledgment signed by Lloyd contains only a single page, numbered as page

---

[23] ECF 5-2.

[24] *See, e.g.*, ECF 7, at 1–4.

52.[25] Nor does the text on Lloyds's acknowledgment line up with the text on the signature page of the Exhibit A handbook.[26] Lloyd attests that she never received a copy of the Exhibit A handbook and that she was never told she would have to arbitrate all disputes.[27]

Discovery—which this Court has already ordered to commence—may allow the parties to shed further light on the veracity of their respective claims. But at this stage of the proceedings, there is simply insufficient evidence to show that there was a meeting of the minds on the matter of arbitration. Without such an agreement, it would be improper for the Court to compel arbitration. *See Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 297 (2010) ("[A] court may order arbitration of a particular dispute only where the court is satisfied that the parties agreed to arbitrate *that dispute*.") (citations omitted); *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002); *AT&T Techs., Inc. v. Comm'ns Workers*, 475 U.S. 643, 649 (1986). The Court cannot conclude on the record before it that the parties had an agreement to arbitrate.

---

[25]  *Compare* ECF 5-3, at 51 *with* ECF 5-3, at 53.

[26]  *Id.*

[27]  ECF 7-1, ¶¶ 2, 8–9.

### III. CONCLUSION

Defendant Oak at the League LLC's motion to compel arbitration and to dismiss [ECF 5] is **DENIED WITHOUT PREJUDICE**. Oak may reassert its position that arbitration should be compelled after discovery, in a motion for summary judgment or at trial.

**SO ORDERED** this the 26th day of May 2020.

Steven D. Grimberg
United States District Court Judge